# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                :
                                         :
      Plaintiff,                        :
                                         :
   v.                                    :    Criminal Action No. 08-23-SLR
                                         :
CLARENCE MITCHELL,                       :
                                         :
      Defendant.                        :

## MEMORANDUM IN RESPONSE TO DEFENDANT'S PRE-TRIAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

In the last three months of 2007, officers with the Wilmington Police Department Vice Squad ("WPD") investigated reports from a past-proven reliable confidential source that the defendant was distributing cocaine base in the Wilmington area. As part of that investigation, WPD used a confidential informant to make controlled purchases of crack cocaine from the defendant on five (5) separate occasions. On December 27, 2007, officers applied for and received a search warrant for a number of locations, including the residence at 3411 Franklin Place. In the early morning hours of that date, WPD executed the search warrant at this residence, where the defendant was found and arrested. While searching 3411 Franklin Place, officers recovered approximately 4 ½ ounces (gross weight) of cocaine, over six thousand dollars in United States currency, drug packaging paraphernalia, and a loaded firearm. The defendant later gave a post-Miranda recorded statement to WPD officers with regard to the firearm, cocaine, paraphernalia and currency.

In his amended pretrial motion to suppress evidence and statements (D.I. 24), the defendant asserts that the affidavit to the search warrant contains insufficient facts to link the defendant's drug-dealing activity to the location searched – namely 3411 Franklin Place. Accordingly, the defendant

contends that all evidence seized at that location, as well as all statements he gave to the law enforcement after his arrest, should be suppressed.

The issuing magistrate had a substantial basis to conclude that 3411 Franklin Place would contain evidence of the defendant's drug-trafficking activity. From the facts contained in the affidavit of probable cause, it was clear that the defendant was an organized drug-dealer operating in the Wilmington area. As such, it was reasonable to infer that evidence of this activity would be found at his residence – a location which, according to the facts in the affidavit, was likely 3411 Franklin Place. Moreover, even if the Court were to inclined to conclude otherwise, the very existence of a warrant for 3411 Franklin Place brings the search of that residence under the ambit of the good-faith exception to the exclusionary rule, pursuant to United States v. Leon, 468 U.S. 897 (1984) and its progeny. Therefore, the government respectfully asserts that the defendant's motion should be denied.

## FACTUAL BACKGROUND

On December 27, 2007, WPD Detectives Todd Riley and Robert Cunningham applied for and received a Delaware State search warrant for 3411 Franklin Place, Wilmington, DE 19802 from the Justice of the Peace, Court 20. A copy of the search warrant and the affidavit are attached to the defendant's motion; another copy is attached as Exhibit A to this memorandum for the Court's convenience.

According to the affidavit, WPD officers met with a past-proven reliable confidential source who advised that an individual known as "Fat Gus" was distributing crack cocaine to customers in the Wilmington area. (Ex. A ¶ 11). Specifically, the confidential source indicated that "Fat Gus" would, once contacted on his cellular telephone, deliver crack cocaine to his customers in the city

2

of Wilmington using rental vehicles.  (<u>Id</u>.).  "Fat Gus" was later identified by the confidential source

as the defendant, Clarence Mitchell.  (<u>Id</u>. ¶ 12).

The defendant had been investigated by WPD in the past, and was arrested for drug crimes.

(<u>Id</u>. ¶ 12).  Further, WPD believed – through confidential source information as well as through

personal observation – that the defendant was currently acting as the supplier for a group of street-

level drug dealers in the center city area of Wilmington.  (<u>Id</u>. ¶ 24).

During a three-month period in 2007, WPD used a confidential informant to purchase crack

cocaine from the defendant on five (5) separate occasions:  the second week of October; the first

week of November; the fourth week of November; the first week of December; and the fourth week

of December.  (<u>Id</u>. ¶¶ 13, 16, 19, 23, and 25).  For each of these transactions, the confidential

informant was thoroughly searched by law enforcement prior to meeting the defendant and found

to be free of any narcotics or contraband, and made the crack cocaine purchase while under police

surveillance.  (<u>Id</u>. ¶¶ 13, 16, 19, 23, and 25).  In the controlled buys, the defendant used four

different vehicles, including a Black Nissan Armada rental car, a blue Jeep Cherokee registered to

the defendant's mother, a blue Ford Taurus station wagon that was also registered to the defendant's

mother, and a Buick Park Avenue.  (<u>Id</u>. ¶¶ 14, 17, 18, and 25).

On a number of occasions, WPD attempted to decipher where the defendant was residing.

The location of the defendant's residence was important to the officers since, according to their

training and experience, drug traffickers typically only carry enough drugs on their person for an

individual sale; their drug supply is usually be hidden at a secured location, such as their residence.

(<u>Id</u>. ¶ 9).

The defendant's home address, as listed on both his driver's license and the Delaware Criminal Justice Information System (DELJIS), was 505 Shearman Street in Wilmington. (Id. ¶ 15). WPD conducted surveillance on this residence on several occasions; the defendant was never observed at that location. (Id.). Indeed, despite performing surveillance on the defendant numerous times throughout a three-month investigation, there is no mention in the affidavit at all of WPD ever seeing the defendant go to 505 Shearman Street.

WPD did, however, observe the defendant going into the residence at 3411 Franklin Place on three separate occasions. First, in the fourth week of November 2007, after observing the defendant sell cocaine base to a confidential informant in the Wilmington area, WPD tailed the defendant in order to ascertain the location of his residence. (Id. ¶¶ 19, 20). After observing him go to a barber shop in Wilmington for about twenty minutes, law enforcement officers followed the defendant to 3411 Franklin Place, where they watched him park the blue Jeep Cherokee he was driving and enter the residence there. (Id. ¶ 20). He exited the location approximately twenty minutes later and drove to the center city area of Wilmington.[1]  (Id.). Second, in the first week of December 2007, Detective Emory of WPD set up covert surveillance at the 3411 Franklin Place address. (Id. ¶ 22). Emory observed the defendant drive to that location, park, and then enter the dwelling. Shortly thereafter, the defendant exited the residence and drove to center city Wilmington. (Id. ¶ 22). Third, in the fourth week of December 2007, WPD had a confidential informant call the defendant and request an amount of crack cocaine. (Id. ¶ 25). After this call was placed, WPD observed the defendant exit a barber shop in Wilmington and proceed to 3411 Franklin Place. (Id.).

---

[1]  Approximately two hours later, WPD officers returned to the area of 3411 Franklin Place; the blue Jeep Cherokee was observed parked on the same block as the residence. (Id.).

He entered the residence there, remained for five minutes, and then drove to a location that he and the confidential informant agreed upon for the crack cocaine sale. (Id.).

During their investigation, WPD performed various records checks to verify who resided at 3411 Franklin Place. (Id. ¶ 21). A property search revealed that an individual named Denise Smiley was listed as the owner of the property as of August 28, 2007. (Id.). Ms. Smiley, however, also had an address reported in DELJIS as 505 Shearman Street since December 1, 2004 – the same address listed for the defendant as of February 8, 1997. (Id.).

In the early morning hours of December 27, 2007, WPD officers executed a search warrant on 3411 Franklin Place. The defendant was present at that location and arrested. Pursuant to the warrant, officers recovered approximately 4 ½ ounces (gross weight) of cocaine, approximately sixty three hundred dollars ($6,300) in United States currency, drug packaging paraphernalia, and a loaded firearm. The defendant later gave several inculpatory post-Miranda statements.[2]

## LEGAL ARGUMENT

The government respectfully asserts that the defendant's motion should be denied. The issuing magistrate had a substantial basis to conclude that 3411 Franklin Place would contain evidence of the defendant's drug-trafficking activity. The affidavit of probable cause establishes that the defendant was an organized crack-dealer in the Wilmington area. As such, it was reasonable to infer that evidence of that activity would be found at his residence, 3411 Franklin Place – a location where the defendant was observed a number of times during WPD's investigation, including

---

[2] The defendant's only argument with regard to the admissibility of these statements is that they are "fruit" of the "illegal" search of his residence, and therefore must be suppressed pursuant to Wong Sun v. United States, 371 U.S. 471 (1963). (D.I. 24 ¶ 11). Accordingly, these statements are not discussed in detail in this memorandum.

shortly before and after engaging in drug transactions.  Moreover, even if the Court were inclined

to find otherwise, WPD officers executed the warrant in good faith; accordingly, the exclusionary

rule is inapplicable to the search pursuant to the doctrine articulated at United States v. Leon, 468

U.S. 897 (1984).

### A.    Standard of Review

In ruling on a motion to suppress evidence based on a search warrant, a district court should

not engage in a *de novo* analysis when reviewing the search warrant affidavit for probable cause.

Rather, "conclusions of a neutral magistrate regarding probable cause are entitled to a great deal of

deference by a reviewing court, and the temptation to second-guess those conclusions should be

avoided."  United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005).  This is true even in "doubtful

or marginal cases."   United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993) (quotation and

citation omitted).

### B.    The Magistrate Had a Substantial Basis to Conclude that 3411 Franklin Street Would Contain Evidence of the Defendant's Drug-Dealing Activity

A search warrant is supported by probable cause if the affidavit attached thereto establishes,

in light of the totality of the circumstances, that "there is a fair probability that contraband or

evidence of a crime will be found in a particular place."  United States v. Hodge, 246 F.3d 301, 305

(3d Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "[D]irect evidence linking the

place to be searched to the crime is not required for the issuance of a search warrant."  United States

v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993).  Rather, probable cause is often "inferred by

considering the type of crime, the nature of the items sought, the suspects' opportunity for

concealment and normal inferences about where a criminal might hide" the fruits of his crime.  Id.

(citations and quotations omitted).

If a search warrant affidavit establishes that the target is an experienced drug-dealer, a magistrate may infer that evidence of drug trafficking may be at his home. For example, in Hodge the defendant argued, and the District Court agreed, that the search warrant affidavit "failed to establish a nexus between [the defendant's] drug activity and [his] home." Hodge, 246 F.3d at 305. The Third Circuit reversed. Id. Although the affidavit contained "no direct evidence that drugs or drug paraphernalia would be located at [the defendant's] home," the court held that, since the affidavit portrayed the defendant as an organized and experienced drug-dealer, the magistrate could reasonably infer that he would store evidence of that trafficking at his residence. Id. at 305-06; see also United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002) (stating that evidence is likely to be found where drug dealers reside). Such an inference gains strength if the target's home is in the same city where his drug-dealing activity takes place. Hodge, 246 F.3d at 307 ("Hodge's home was in the same city where he was to make the anticipated drug delivery, rendering his home a more likely repository of his drug-related paraphernalia.").

The search warrant affidavit at issue in the present case is replete with information that the defendant was an organized and experienced drug-dealer in the Wilmington vicinity. A past-proven reliable confidential informant told WPD that the defendant was selling crack cocaine in the Wilmington area. (Ex. A. ¶ 11). More importantly, over a period of three months, WPD corroborated this information by making controlled purchases of crack cocaine from the defendant on five (5) separate occasions; four of these buys were made in the City of Wilmington and one was otherwise in New Castle County. (Id. ¶¶ 13, 16, 19, 23, and 25). For each of these purchases, the defendant arranged for a specific meeting location using his cell phone, and used a number of different vehicles to make the deliveries – including one rental vehicle. (Id. ¶¶ 13, 14, 16, 17, 18,

7

19, 23, and 25). These facts clearly establish that the defendant, at the time of the search warrant application, was engaged in the "drug business," thereby making it reasonable to infer that evidence of that business would be at his home. Hodge, 246 F.3d at 306 (focusing on the "organized" and "prearranged" nature of the defendant's drug trafficking activity).

Likewise, the magistrate had a substantial basis to conclude that 3411 Franklin Street was the defendant's residence, and thus likely to contain evidence of drug-trafficking activity. The following three reasons, considered in their totality, support this conclusion:

- First, the defendant was repeatedly seen at this residence by law enforcement. WPD observed the defendant driving to and entering the house on 3411 Franklin Street on three separate occasions. (Ex. A ¶¶ 20, 22, 25). Two of these occasions were immediately before or shortly after he engaged in a sale of crack cocaine.[3] (Id. ¶¶ 20, 25). Further, on a fourth occasion, WPD observed a vehicle the defendant had been seen operating parked on the block of 3411 Franklin Street. (Id. ¶ 20); Compare Burton, 288 F.3d at 104 (stating that the "best evidence that the North Garnet Street property was Burton's was that he parked his Maxima in close proximity to the house").

- Second, the defendant did not appear to reside at his last known address. Although the defendant's home address was listed as 505 Shearman Street in both DELJIS and his driving records, WPD never observed the defendant at that location despite performing surveillance on him and the residence a number of times. (Ex. A ¶ 15).

- Third, and perhaps most telling, the owner of record for 3411 Franklin Street was an individual who was listed as having the same address as the defendant in the past. Specifically, as of August 28, 2007, Denise Smiley was the registered owner of the residence. (Ex. A ¶ 21). Previously, according to DELJIS records, Ms. Smiley lived at the same address as the defendant for a number of years. (Id.).

---

[3] Indeed, the fact that the defendant went directly to 3411 Franklin Street immediately prior to a scheduled drug transaction weighs heavily in favor of probable cause to search that residence, regardless of whether or not it was the defendant's home. Compare United States v. Smith, 219 Fed. Appx. 242, 244 (3d Cir. Mar. 13, 2007) ("Glenn's series of movements entering and exiting 2920 N. Bonsall Street immediately preceding and following the observed drug transaction demonstrates Glenn was hiding drugs at that address.") with Ex. A ¶ 25 (indicating that the defendant, after receiving a phone order for crack cocaine from a confidential informant, proceeded directly to 3411 Franklin Street, went inside for five minutes, and then drove to the agreed upon meet location).

Moreover, the fact that the defendant was not listed as the owner of 3411 Franklin Street does not undermine the conclusion that he resided at that address.  As the first paragraph of the affidavit reflects, the officers knew from their training and experience that "drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies." (Ex. A ¶ 1).  Ms. Smiley's ownership of the property is certainly consistent with this behavior.

### C.     The Exclusionary Rule Is Inapplicable Since WPD Executed the Search Warrant with Objectively Reasonable Reliance on the Warrant's Authority

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court created an exception to the exclusionary rule.[4]  In particular, the so-called Leon exception "instructs that suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." Hodge, 246 F.3d at 307 (citation and quotation omitted).   The mere existence of a search warrant typically justifies the application of this exception. Id. at 307-08 (indicating that the "mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.").  Accordingly, since there is no dispute that the WPD officers in question relied upon the search warrant attached as Exhibit A when they searched the residence at 3411 Franklin Place, the defendant's motion should be denied pursuant to the Leon doctrine.[5]

---

[4]  Indeed, if the Court prefers, it may bypass the issue of whether or not the search warrant is supported by probable cause altogether and proceed directly to a consideration of the officers' good faith.  See United States v. $92,422.57, 307 F.3d 137, 145 (3d Cir. 2002) ("Under *Leon*, if a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing court to turn immediately to a consideration of the officers' good faith.") (citation and quotation omitted).

[5]  The defendant does not assert that any of the exceptions to the Leon doctrine are present here.  United States v. Zimmerman, 277 F.3d 426, 436-37 (3d Cir. 2002) (listing the Leon

## CONCLUSION

**WHEREFORE,** the United States respectfully requests that the Court deny Defendant's

Amended Pre-Trial Motion to Suppress Evidence and Statements.


Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY


BY:     /s/ Shawn A. Weede
Shawn A. Weede
Assistant United States Attorney

Dated:  June 3, 2008

exceptions).

# EXHIBIT A

IN THE
JUSTICE OF THE PEACE COURT # 20
STATE OF DELAWARE

**IN THE MATTER OF :**                                          **Daytime Search Warrant**

1) Mitchell, Clarence A bmnh 2/28/71

2) 3411 Franklin Place
   Wilmington, Delaware 19802

3) 2001 Jeep Cherokee blue in color
   Delaware registration PC 197381
   VIN 1J4FF47S81L592717

4) 1997 Ford Taurus station wagon          5) 1995 Buick Park Avenue blue in color
   Delaware registration PC 480919             Delaware registration 119468
   VIN 1FALP57UXVA235432                         VIN 1G4CW52K4SH642762

**THE STATE OF DELAWARE TO WIT: DETECTIVES** Todd C. Riley and Robert Cunningham, with the
assistance of any police officer or constable or any other necessary or proper person(s) or assistance.

   **GREETINGS ;** Upon the annexed affidavit and application or complaint for a search warrant, as I am
satisfied that there is probable cause to believe that certain property , namely: **A SCHEDULE 2  NARCOTIC
SUBSTANCE TO WIT : crack cocaine used or intended to be used for the sale of and  distribution of crack
cocaine, is being concealed in/or on Clarence A. Mitchell bmnh 2/28/71 and/or 3411 Franklin Place,
Wilmington, Delaware 19802 and/or 2001 Jeep Cherokee blue in color bearing Delaware registration
PC197381 VIN 1J4FF47S81L592717and/or 1997 Ford Taurus station wagon bearing Delaware registration
PC 480919 VIN 1FALP57UXVA235432 and/or 1995 Buick Park Avenue Delaware registration 119468 VIN
1G4CW52K4SH642762 described in the annexed affidavit and application of complaint;**

**NOW, THEREFORE, YOU ARE HEREBY COMMANDED,** within 10 days the date hereof to search the above-
named person, persons, house, conveyance or place  for the property specified in the annexed affidavit and
application, and to search any occupant or occupants found in the house, place or conveyance above named for such
property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched
is not a dwelling house, and, if the property papers, articles or things, or any part thereof, be found there, to seize it,
giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt
for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare
a signed inventory of the goods seized in the presence of the person from whose possession or premises the property
was taken, if they are present, or, if they are not present, in the presence of at least one witness, and to return this
warrant, accompanied by written inventory, to the forthwith.

Date this 27th  day of  December  2007

_____
JUDGE OF THE JUSTICE OF THE PEACE COURT # 20
NEW CASTLE COUNTY, STATE OF DELAWARE

# THE
## JUSTICE OF THE PEACE COURT # 20
## STATE OF DELAWARE

IN THE MATTER OF :

Affidavit & Application

1) Mitchell, Clarence A. bmnh 2/28/71

2) 3411 Franklin Place
   Wilmington, Delaware 19802

3) 2001 Jeep Cherokee blue in color
   Delaware registration PC 197381
   VIN 1J4FF47S81L592717

4) 1997 Ford Taurus station wagon
   Delaware registration PC 480919
   VIN 1FALP57UXVA235432

5) 1995 Buick Park Avenue blue in color
   Delaware registration 119468
   VIN 1G4CW52K4SH642762

### STATE OF DELAWARE
### NEW CASTLE COUNTY SS.

BE IT REMEMBERED, ON THIS 27th DAY OF December 2007

before me, the Honorable Judge _____

personally appeared DETECTIVES Todd C. Riley and Robert Cunningham, being by me duly sworn do depose and say:

That the affiant (or Affiants) has (or have) reason to believe and (does so) believe that in the dwelling known as: 3411 Franklin Place, Wilmington, Delaware 19802 and/or 2001 Jeep Cherokee blue in color bearing Delaware registration PC197381 VIN 1J4FF47S81L592717 and/or 1997 Ford Taurus station wagon bearing Delaware registration PC 480919 VIN 1FALP57UXVA235432 and/or 1995 Buick Park Avenue Delaware registration 119468 VIN 1G4CW52K4SH642762 and/or on Clarence A. Mitchell bmnh 2/28/71; described in the annexed affidavit and application of complaints(s) that there has been and/or there is now located and/or concealed certain property in said house, place, conveyance and/or on the person or persons of the occupants thereof, consisting of property, papers, articles or things which are instruments of a criminal offense, and/or obtained in the commission of a crime, and/or designated to be used in the commission of a crime, and not reasonably calculated to be used for any other purpose and/or the possession of which is unlawful and, in particular, sale of and distribution of cocaine and any drug related paraphernalia commonly used to process, package, and/or consume drugs, which said property, papers, articles or things were, are or will be possessed and/or used in violation of Title 16, Section 4751, Delaware Code, in that possession with intent to deliver schedule a 2 narcotic to wit:  Crack COCAINE, And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exist are as follows:

00000105

## PROPERTY TO BE SEIZED

1. ANY CRACK COCAINE OR AND RELATED PARAPHERNALIA INCLUDING, BUT NOT LIMITED TO, PACKAGING MATERIALS, SCALES AND PIPES.

2. INDICIA OF OCCUPANCY OR RESIDENCY OF THE DESCRIBED PREMISES, INCLUDING, BUT NOT LIMITED TO, UTILITY AND TELEPHONE BILLS, CANCELED ENVELOPES AND KEYS.

3. BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION INCLUDING ADDRESSES AND / OR TELEPHONE NUMBERS INDIVIDUALS ASSOCIATED IN THE DRUG TRAFFICKING OPERATION.

4. ANY DOCUMENTS, RECEIPTS, TICKETS OR OTHER PAPERS REFLECTING OR EVIDENCING TRAVEL BY ANY MEANS IN THE FURTHERANCE OF THE DRUG TRAFFICKING ENTERPRISE BETWEEN THE STATES OF DELAWARE AND OTHER STATES.

5. BOOKS, RECORDS, RECEIPTS, BANK STATEMENTS AND RECORDS, MONEY DRAFTS, LETTERS OF CREDIT, CASHIER'S CHECKS RECEIPTS, PASSBOOKS, BANK CHECKS, SAFETY DEPOSIT KEYS, LOAN DOCUMENTS, WIRE TRANSFERS AND OTHER PAPERS OR DOCUMENTS EVIDENCING THE OBTAINING, SECRETING, TRANSFER, LAUNDERING AND INVESTMENT, AND / OR CONCEALMENT OF ANY ASSETS OR MONIES OBTAINED DIRECTLY OR INDIRECTLY FROM VIOLATIONS OF THE CONTROLLED SUBSTANCES LAWS.

6. ANY UNITED STATES CURRENCY IN CLOSE PROXIMITY TO CRACK COCAINE OR PARAPHERNALIA, OR ANY QUANTITIES OF CURRENCY IN EXCESS OF $100.00    OR OTHER VALUABLES FOUND IN EXCESS SUCH AS MULTIPLE VCR'S, CAMERAS, VIDEO TAPE, FILM AND / OR STEREO EQUIPMENT THAT MAY BEEN USED IN LIEU OF CURRENCY TO ATTAIN CONTROLLED SUBSTANCES.

7. ANY RIFLE, PISTOL, SHOTGUN OR ANY DEVICE THAT A SHOT MAY BE DISCHARGED OR ANY WEAPON MANIFESTLY UTILIZED TO PROTECT ILLEGAL DRUGS.

Based upon your affiants training, experience, and participation in other drug investigations, your affiant can state:

1) THAT DRUG TRAFFICKERS VERY OFTEN PLACE ASSETS IN NAMES OTHER THAN THEIR OWN TO AVOID DETECTION OF THESE ASSETS BY GOVERNMENT AGENCIES AND EVEN THOUGH THESE ASSETS ARE IN OTHER PERSONS' NAMES, THE DRUG TRAFFICKER ACTUALLY OWN AND CONTINUE USE THESE ASSETS AND EXERCISE DOMINION AND CONTROL OVER THEM ;

2) THAT DRUG TRAFFICKERS MUST MAINTAIN ON HAND, LARGE AMOUNTS OF U.S. CURRENCY IN ORDER TO MAINTAIN AND FINANCE THEIR ON-GOING BUSINESS ;

3) THAT DRUG TRAFFICKERS MAINTAIN BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS, MONEY ORDERS, AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION OF ILLEGAL CONTROLLED SUBSTANCES ;

4) THAT IT IS COMMON FOR DRUG TRAFFICKERS TO SECRET CONTRABAND , PROCEEDS OF ILLEGAL DRUG SALES AND RECORDS OF DRUG TRANSACTIONS IN SECURE LOCATIONS WITHIN THEIR RESIDENCE AND / OR BUSINESS FOR THEIR READY ACCESS AND TO CONCEAL FROM LAW ENFORCEMENT OFFICERS ;

5) THAT WHEN DRUG TRAFFICKERS AMASS LARGE PROCEEDS FROM THE SALE OF DRUGS, THE DRUG TRAFFICKERS ATTEMPT TO LEGITIMIZE THESE PROFITS. TO DO THIS DRUG TRAFFICKERS UTILIZE DOMESTIC BANKS AND THEIR ATTENDANT SERVICES, SECURITIES, CASHIER CHECKS, MONEY DRAFTS ,LETTERS OF CREDIT, REAL ESTATE AND BUSINESS FRONTS ;

6) THAT DRUG TRAFFICKERS COMMONLY MAINTAIN ADDRESSES AND / OR TELEPHONE NUMBERS IN BOOKS OR PAPERS THAT REFLECT PERSONS ASSOCIATED IN DRUG TRAFFICKING AND / OR DISTRIBUTION ORGANIZATIONS ;

7) THAT DRUG TRAFFICKERS OFTEN TAKE PAYMENT IN THE FORM OF STOLEN ITEMS SUCH AS TELEVISIONS, STEREOS, VCR'S, GUNS AND / OR THEY OBTAIN THESE ITEMS LEGITIMATELY WITH DRUG PROFITS ;

8) THAT YOUR AFFIANTS ARE AWARE THAT COURTS HAVE RECOGNIZED  THAT UNEXPLAINED WEALTH IS PROBATIVE EVIDENCE OF CRIMES MOTIVATED BY GREED, IN PARTICULAR, TRAFFICKING IN CONTROLLED SUBSTANCES.

9) THAT YOUR AFFIANTS CAN STATE THAT DRUG TRAFFICKERS ONLY TRANSPORT ENOUGH DRUGS THAT THEY WILL NEED FOR THE SALE. THEY WILL MAINTAIN THE OTHER DRUGS AT A SECURED LOCATION, INCLUDING BUT NOT LIMITED TO THEIR RESIDENCE.

00000107

00000107

## PROBABLE CAUSE

10) Your affiants can truly state that they are sworn members of the Wilmington Department of Police and are currently assigned to the Drug, Organized Crime and Vice Division and have a combined 24 years of police experience with the department.

11) Your affiant can truly state that these investigators (Cunningham and Riley) spoke with a past proven reliable confidential informant who advised that a black male subject in his mid thirties known as "Fat Gus" and described as being approximately 6'02" feet tall, heavy build (300 pounds) with balding hair was distributing crack cocaine to customers in the City of Wilmington.. Further, the informant advised "Fat Gus" is contacted by customers via cellular telephone at 302-685-9445 and delivers the crack in rental vehicles to a mutually agreed upon meet location.

12) Your affiant can truly state that the nick name of "Fat Gus" was known by these detectives to be used by Clarence Mitchell bmnh 2/28/71 who is 6'01" tall, heavy build-approximately 300 pounds, and is balding. Mitchell was the target of past title 16 investigations conducted by the Wilmington Department of Police Vice Unit resulting in his arrest for drug violations. Further, Mitchell has been arrested by the Wilmington Department of Police on weapons offenses. A DELJIS photograph of Clarence Mitchell bmnh 2/28/71 was obtained and later presented to the informant. At that time the informant advised the subject in the photograph was the "Fat Gus" that they knew to be selling crack cocaine.

13) Your affiants can truly state that these investigators met with a past proven reliable confidential informant during the second week of October 2007 for the purpose of obtaining a controlled purchase of crack cocaine from Clarence Mitchell. The confidential informant was met at a predetermined location and searched thoroughly for any money, drugs and contraband. This search met with negative results. The confidential informant then contacted Mitchell via his cellular telephone at 302-685-9445 and requested an amount of crack cocaine. Mitchell subsequently advised the informant to meet him at a location in the City of Wilmington, Delaware. The informant was then issued a sum of departmental issued buy money (serial numbers AB 54432240 F and AF 31653109 A) by these detectives. The confidential informant then responded to the agreed upon meet location and waited for the arrival of Mitchell. A short time later Mitchell arrived in a Black Nissan Armada SUV bearing Pennsylvania registration GVJ 5276 and met with the informant. The informant then turned over a sum of departmentally issued buy money to Mitchell who in turn handed the informant an amount of an off white chunky material packaged in blue tinted zip lock plastic bags. The informant subsequently exited the area and met with these detectives at a predetermined location and handed over the off white chunky material to these officers. The informant also provided the above noted details of the transaction. It should be noted the informant was observed during and after the transaction by these detectives and other members of the Wilmington Department of Police Vice Squad. The white chunky material was later field tested

by these detectives and produced a positive reaction as being crack cocaine.

14) Your affiants can truly state that assisting members of the Wilmington Department of Police Drug Unit covertly tailed Mitchell after the aforementioned controlled purchase of crack cocaine for a period of time in an attempt to ascertain his residence. During the tail, the vehicle was lost and surveillance was terminated. It should be noted a registration inquiry was conducted on the Nissan Armada (Pa GVJ 5276) and was determined to be a rental vehicle.

15) Your affiants can truly state that information obtained from DELJIS indicated that Mitchell's State of Delaware driver's license (965420) bears the address of 505 Shearman Street, Wilmington, Delaware. Further, the same address was supplied by Mitchell when he came into contact with law enforcement as illustrated by DELJIS. These officers conducted surveillance at the dwelling on several occasions with neither Mitchell nor the above noted Nissan Armada being observed.

16) Your affiants can truly state that these investigators met with a past proven reliable confidential informant during the first week of November 2007 for the purpose of obtaining a second controlled purchase of crack cocaine from Clarence Mitchell. The confidential informant was met at a predetermined location and searched thoroughly for any money, drugs and contraband. This search met with negative results. The confidential informant then contacted Mitchell via his cellular telephone at 302-685-9445 and requested an amount of crack cocaine. Mitchell subsequently advised the informant to meet him at a location in the City of Wilmington, Delaware. The informant was then issued a sum of departmental issued buy money (serial numbers GC 61095118 A, EB 15769410 F, GJ 33769393 A, GJ 33769405 A, GC 14077662 A, and GJ 33769404 A) by these detectives. The confidential informant then responded to the agreed upon meet location and waited for the arrival of Mitchell. A short time later Mitchell arrived in a Blue Jeep Cherokee SUV bearing Delaware registration PC 197381 and met with the informant. The informant then turned over a sum of departmentally issued buy money to Mitchell who in turn handed the informant an amount of an off white chunky material packaged in red tinted zip lock plastic bags. The informant subsequently exited the area and met with these detectives at a predetermined location and handed over the off white chunky material to these officers. The informant also provided the above noted details of the transaction. It should be noted the informant was observed during and after the transaction by these detectives and other members of the Wilmington Department of Police Vice Squad. The white chunky material was later field tested by these detectives and produced a positive reaction as being crack cocaine and turned into evidence.

00000109

17) Your affiants can truly state that assisting members of the Wilmington Department of Police Drug Unit covertly tailed Mitchell after the aforementioned controlled purchase of crack cocaine for a period of time in an attempt to ascertain his residence. During the tail, the vehicle was followed to a bar located in the City of Wilmington where Mitchell remained for an unknown period of time. At that time surveillance was terminated. It should be noted a registration inquiry was conducted on the Blue Jeep Cherokee bearing Delaware registration PC 197381. The vehicle was determined to be a 2001 Jeep registered to Mary M. McGee of 1106 E. 14th Street, Wilmington, Delaware. It should be noted Mary McGee is known by these detectives to be the mother of Clarence Mitchell.

18) Your affiants can truly state that surveillance was conducted at 1106 E. 14th Street by these detectives on several occasions at which time Clarence Mitchell nor the Jeep Cherokee were observed. Although, a steel blue Ford Taurus station wagon bearing Delaware registration PC 480919 registered to Mary McGee, which was driven by Clarence Mitchell in the past, was observed parked in the driveway to the dwelling on several occasions.

19) Your affiants can truly state that these investigators met with a past proven reliable confidential informant during the fourth week of November 2007 for the purpose of obtaining a third controlled purchase of crack cocaine from Clarence Mitchell. The confidential informant was met at a predetermined location and searched thoroughly for any money, drugs and contraband. This search met with negative results. The confidential informant then contacted Mitchell via his cellular telephone at 302-685-9445 and requested an amount of crack cocaine. Mitchell subsequently advised the informant to meet him at a location in the City of Wilmington, Delaware. The informant was then issued a sum of departmental issued buy money (serial numbers EB 52601426 A, IC 33414950 A, and DL 71442784 A) by these detectives. The confidential informant then responded to the agreed upon meet location and waited for the arrival of Mitchell. A short time later Mitchell arrived in a Blue Jeep Cherokee SUV bearing Delaware registration PC 197381 and met with the informant. The informant then turned over a sum of departmentally issued buy money to Mitchell who in turn handed the informant an amount of an off white chunky material packaged in pink tinted zip lock plastic bags. The informant subsequently exited the area and met with these detectives at a predetermined location and handed over the off white chunky material to these officers. The informant also provided the above noted details of the transaction. It should be noted the informant was observed during and after the transaction by these detectives and other members of the Wilmington Department of Police Vice Squad. The white chunky material was later field tested by these detectives and produced a positive reaction as being crack cocaine and turned into evidence.

00000110

20) Your affiants can truly state that assisting members of the Wilmington Department of Police Drug Unit covertly tailed Mitchell after the aforementioned controlled purchase of crack cocaine for a period of time in an attempt to ascertain his residence. During the tail, the blue Jeep traveled to the 1700 block of N. Pine Street and parked. Mitchell subsequently exited the vehicle and entered Le Roi Monae Barber Shop located at 1711 Pine Street Wilmington, Delaware. After approximately twenty minutes Mitchell exited the barber shop and entered the blue Jeep. The vehicle was followed to the 3400 block of Franklin Place located in the City of Wilmington, Delaware and parked. At that time Clarence Mitchell was observed exiting the vehicle wearing a brown jacket and black pants and entering a dwelling known as 3411 Franklin Place. The dwelling is described as a two story row home located on the west side of the block with red bricks and a front porch. Approximately twenty minutes later Mitchell exited the dwelling and entered the vehicle. The vehicle traveled into center city (Wilmington) with surveillance being terminated. These detectives later returned to the 3400 block of Franklin Place approximately two hours after Mitchell exited the home and observed the blue Jeep Cherokee bearing Delaware registration PC 197381 parked in the block.

21) Your affiants can truly state that these detectives conducted a property search on 3411 Franklin Place, Wilmington Delaware 19802. The current owner of the property as of 8/28/07 is listed as Denise Smiley. A DELJIS driver's license inquiry was conducted on Denise Smiley. Said inquiry indicated that Denise Renee Smiley bfnh [redacted] possesses a State of Delaware driver's license [redacted] bearing an address of 3411 Franklin Place Wilmington, Delaware. A criminal history inquiry was also conducted on Denise Smiley bfnh [redacted] The inquiry indicated that the last time she had contact with law enforcement she was residing at 505 Shearman Wilmington, Delaware 19801. Further, she has used the same address ( 505 Shearman Street) since 12/01/2004. It should be noted Clarence Mitchell's current address of record is also 505 Shearman Street, Wilmington, Delaware and has used same since 2/8/1997.

22) Your affiants can truly state during the first week of December 2007 covert surveillance was conducted by Detective Emory at 3411 Franklin Place, Wilmington, Delaware. During that time the steel blue Ford Taurus bearing Delaware PC480919 arrived in the 3400 block of Franklin Place and parked. Clarence Mitchell then exited the vehicle from the driver's side of same and entered 3411 Franklin Place. A short time later Mitchell exited the dwelling and entered the vehicle which left the area and traveled to center city Wilmington. It should be noted Mitchell was captured on video by Detective Emory exited the vehicle and entering the home.

23)     Your affiants can truly state that these investigators met with a past proven reliable confidential informant during the first week of December 2007 for the purpose of obtaining a forth controlled purchase of crack cocaine from Clarence Mitchell. The confidential informant was met at a predetermined location and searched thoroughly for any money, drugs and contraband. This search met with negative results. The confidential informant then contacted Mitchell via his cellular telephone at 302-685-9445 and requested an amount of crack cocaine. Mitchell subsequently advised the informant to meet him at a location in the City of Wilmington, Delaware. The informant was then issued a sum of departmental issued buy money (serial numbers EA 78167147 F and BB 08161797 B) by these detectives. Assisting detectives subsequently tailed Mitchell in the steel blue Ford Taurus station wagon from center city Wilmington to the agreed upon meet location of the informant and Mitchell. He subsequently arrived in the steel blue Ford Taurus station wagon bearing Delaware registration PC 480919 and met with the informant. The informant then turned over a sum of departmentally issued buy money to Mitchell who in turn handed the informant an amount of an off white chunky material packaged in pink tinted zip lock plastic bags. The informant subsequently exited the area and met with these detectives at a predetermined location and handed over the off white chunky material to these officers. The informant also provided the above noted details of the transaction. It should be noted the informant was observed during and after the transaction by these detectives and other members of the Wilmington Department of Police Vice Squad. The white chunky material was later field tested by these detectives and produced a positive reaction as being crack cocaine and turned into evidence.

24)   Your affiants can truly state after the above noted controlled purchase, assisting Detectives covertly tailed the Ford Taurus station wagon being operated by Mitchell to center city Wilmington at which time surveillance was terminated. It should be noted Mitchell is known by these Detectives (through confidential informant information and personal observation) to be the supplier and head of a group of street level title 16 dealers who sell crack cocaine at 7th and Monroe Streets which is located in center City Wilmington.

25) Your affiants can truly state that these investigators met with a past proven reliable confidential informant during the fourth week of December 2007 for the purpose of obtaining a forth controlled purchase of crack cocaine from Clarence Mitchell. The confidential informant was met at a predetermined location and searched thoroughly for any money, drugs and contraband. This search met with negative results. The confidential informant then contacted Mitchell via his cellular telephone and requested an amount of crack cocaine. Mitchell subsequently advised the informant to meet him at a location in New Castle County, Delaware. The informant was then issued a sum of departmental issued buy money (serial numbers recorded) by these detectives. Assisting detectives subsequently observed Mitchell exit the Leroi Monae Barber Shop located at 1711 Pine Street, Wilmington, Delaware and enter a blue in color 1995 Buick Park Avenue bearing Delaware registration 119468. The vehicle was subsequently tailed to the 3400 block of Franklin Place, Wilmington, Delaware and parked. Mitchell exited the vehicle and entered 3411 Franklin Place and remained for approximately five minutes. Mitchell exited the home, entered the vehicle and drove to the agreed upon meet location. He then met with the informant who turned over a sum of departmentally issued buy money to Mitchell who in turn handed the informant an amount of an off white chunky material packaged in a plastic bag. The informant subsequently exited the area and met with these detectives at a predetermined location and handed over the off white chunky material to these officers. The informant also provided the above noted details of the transaction. It should be noted the informant was observed during and after the transaction by these detectives and other members of the Wilmington Department of Police Vice Squad. The white chunky material was later field tested by these detectives and produced a positive reaction as being crack cocaine and turned into evidence. It should be noted after the controlled purchase, assisting officers followed Mitchell in the blue Buick Park Avenue to the 1700 block of Pine Street where he parked. Mitchell exited the vehicle and entered the barber shop located at 1711 Pine Street, Wilmington, Delaware.

26) Your affiants pray that a search warrant be granted for:

A) Mitchell, Clarence A bmnh 2/28/71

B) 3411 Franklin Place, Wilmington, Delaware 19802

C) 2001 Jeep Cherokee blue in color, Delaware registration PC 197381, VIN 1J4FF47S81L592717

D) 1997 Ford Taurus station wagon bearing Delaware registration PC 480919 VIN 1FALP57UXVA235432

E) 1995 Buick Park Avenue blue in color bearing Delaware registration 119468 VIN 1G4CW52K4SH642762

00000113

00000113

SWORN TO AND SUBSCRIBED THIS 27th DAY OF December 2007

AFFIANT: _____                    DATE: 27 December 07
                    Todd C. Riley

AFFIANT: _____                    DATE: 27 December 07
                    Robert Cunningham


_____                     DATE: 27  December 2007
JUDGE OF THE JUSTICE OF THE PEACE COURT #20,
NEW CASTLE COUNTY
STATE OF DELAWARE

