## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 08-23-SLR |
| | ) |
| CLARENCE MITCHELL, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM ORDER**

## I. BACKGROUND

Defendant Clarence Mitchell has filed this motion to suppress evidence seized

on December 27, 2007, pursuant to a search warrant executed on a residence located

at 3411 Franklin Place, Wilmington, Delaware. (D.I. 24) Defendant alleges that the

search warrant was not based on probable cause as the affidavit for the warrant failed

to establish a link between the defendant, the residence searched, and evidence of

drug related crimes. (Id. at 4) Defendant asserts that the "good faith exception" to the

exclusionary rule¹ from United States v. Leon, 468 U.S. 897 (1984), is inapplicable

because "the warrant was based on an affidavit so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable." (D.I. 27 at 7-8)

Defendant also moves to suppress all statements he made to police subsequent to his

arrest, which was the product of the search, based on the "fruit of the poisonous tree

---

¹The exclusionary rule is a judicially created remedy designed to deter police
conduct that violates the constitutional rights of individuals. United States v. Leon, 468
U.S. 897, 919 (1984); United States v. Zimmerman, 277 F.3d 426, 436 (3d Cir. 2002).

doctrine" from Wong Sun v. United States, 371 U.S. 471 (1963). (D.I. 24 at 4) Both parties have fully briefed the motion. (D.I. 26, 27, 28) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion to suppress is denied.

## II. FINDINGS OF FACT

On December 27, 2007, Detectives Todd Riley ("Detective Riley") and Robert Cunningham ("Detective Cunningham")[2] applied for, were granted, and executed a search warrant on 3411 Franklin Place, Wilmington, Delaware. Leading up to obtaining the search warrant, Detectives Riley and Cunningham conducted a two month undercover operation on defendant with the help of a past proven confidential informant. (D.I. 24, ex. A-1) On five separate occasions between October 2007 and the date of the search, the confidential informant made controlled purchases of crack cocaine from defendant while under the supervision and observation of the Wilmington Police Department. (Id. at ¶ 13, ¶ 16, ¶ 19, ¶ 23, ¶ 25) Following each of these controlled purchases, members of the Wilmington Police Department "covertly tailed" defendant in an effort to establish his residence. (Id. at ¶ 17) Defendant was known to both Detective Riley and Detective Cunningham. As they were aware that defendant had been previously arrested, the detectives used the Delaware Justice Information System ("DELJIS") to obtain the last known address for defendant. DELJIS showed 505 Shearman Street, Wilmington Delaware, to be defendant's address. (Id. at ¶ 15)

_____

[2]Detective Riley and Detective Cunningham were members of the Wilmington Department of Police with the Drug, Organized Crime, and Vice Division. Combined they have served 24 years with the police department. (D.I. 24, ex. A-1 at ¶ 10)

2

Following the first controlled purchase, surveillance was conducted on 505 Shearman Street. Neither defendant nor the rented vehicle he operated during the controlled purchase were sighted in the area.[3]  (Id.)

The second controlled purchase between the confidential informant and defendant was set up during the first week of November. (Id. at ¶ 16). Defendant, at the time of the controlled purchase, was seen operating a blue Jeep Cherokee SUV with Delaware registration PC 197381. After the controlled purchase, police followed the vehicle operated by defendant, again with the goal of determining defendant's place of residence. (Id. at ¶ 17)   This attempt was unsuccessful as defendant went to a bar. The police, however, were able to determine that the vehicle operated by defendant was registered to defendant's mother, Mary M. McGee of 1106 E. 14th Street, Wilmington, Delaware. (Id.) Surveillance was conducted at this address, but again neither defendant nor the blue Jeep Cherokee SUV he had been operating were spotted. (Id. at ¶ 18) Subsequent surveillance efforts at 1106 E. 14th Street, yielded similar results. (Id.)

A third controlled purchase between the confidential informant and defendant was set up during the fourth week of November. (Id. at ¶ 19) Defendant again arrived in the blue Jeep Cherokee SUV and was followed by police after the conclusion of the purchase. (Id.) Defendant first drove to the 1700 block of N. Pine Street. (Id. at ¶ 20)

---

[3]Additional surveillance was conducted on 505 Shearman Street on "several occasions." (D.I. 24, ex. A-1 at ¶ 15) At no time was defendant or any vehicle which he operated during any of the controlled purchases seen at that location. (Id.) The dates and duration of those surveillance operations, as well as the exact number of times surveillance was conducted at that location, are not listed in the warrant affidavit.

There he entered Leroi Monae Barber Shop located at 1711 N. Pine Street,

Wilmington, Delaware. Defendant remained in the barber shop for approximately

twenty minutes. (Id.) Then defendant drove to the 3400 block of Franklin Place and

entered a residence at 3411 Franklin Place, Wilmington, Delaware. (Id.) Defendant

remained at the residence for approximately twenty minutes, returned to his vehicle,

and departed toward the center of Wilmington. (Id.) At this point, surveillance was

terminated. Police later returned to the 3400 block of Franklin Place and observed a

blue Jeep Cherokee SUV with registration tags matching the vehicle driven by

defendant earlier that day. (Id.)

Police were able to determine that the current owner of 3411 Franklin Place was

Denise Smiley. (Id. at ¶ 21) Police ran a DELJIS inquiry on Denise Smiley and

discovered that she had previously been known to reside at 505 Shearman Street.[4]

(Id.) In early December, police conducted surveillance operations on 3411 Franklin

Place. (Id.) At some point during the surveillance, defendant was seen arriving at the

3400 block of Franklin Place driving a blue Ford Tarus station wagon with Delaware

registration PC480919[5]. (Id.) Defendant was observed exiting the vehicle and entering

the residence at 3411 Franklin Place. (Id.)

---

[4]Denise Smiley provided this address to law enforcement the last time she came
in contact with them and had been listing this as her address since December of 2004.
(D.I. 24, ex. A-1 at ¶ 21) Of note, this address was also the address listed for
defendant in December of 2004.

[5]This vehicle was known to police to be registered to defendant's mother, Mary
McGee, and was sighted when police had performed surveillance at 1106 E. 14th Street,
the residence of Mary McGee. (D.I. 24, ex. A-1 at ¶ 18)

4

A fourth controlled purchase between the confidential informant and defendant was set up during the first week of December. (Id. at ¶ 23)  This time defendant drove the blue Ford Tarus station wagon, previously sighted at 3411 Franklin Place, to the location of the controlled purchase.  (Id.)  Surveillance of defendant following the controlled purchase was terminated when defendant entered the center city area of Wilmington.  (Id. at ¶ 24)  Defendant visited none of the previously mentioned locations while under surveillance.

A fifth, and final, controlled purchase between the confidential informant and defendant was set up during the beginning of the fourth week of December.  (Id. at ¶ 25)  Police conducted surveillance on defendant leading up to the controlled purchase.  (Id.)  Police observed defendant exit Leroi Monae Barber Shop at 1711 N. Pine Street.  (Id.)  Defendant entered a blue Buick Park Avenue with Delaware registration 119468 and proceeded to the 3400 block of Franklin Place.  (Id.)  There, defendant was seen entering the residence at 3411 Franklin Place and then exiting the residence five minutes later.  (Id.)  Defendant re-entered the Buick Park Avenue and drove directly to the predetermined location for the controlled purchase.  (Id.)  After the purchase was complete, defendant was followed by police.  (Id.)  Defendant returned to the barber shop at 1711 N. Pine Street, at which point surveillance was terminated.  (Id.)

Based on the affidavits from Detective Riley and Detective Cunningham describing the above observations and events, the Justice of the Peace Court #20 issued two search warrants.  One warrant authorized a search at Leroi Monae Barber

Shop at 1711 N. Pine Street.[6]  (D.I. 24, ex B)  The second warrant authorized a search

of defendant's person, the residence at 3411 Franklin Place, and three cars.[7]  (D.I. 24,

ex A)  The search of 3411 Franklin Place, that is currently contested before this court,

resulted in the police seizing "approximately 4.5 ounces (gross weight) of cocaine, over

six thousand dollars in United States currency, drug packing paraphernalia, and a

loaded firearm." (D.I. 26 at 1)  Defendant was arrested following the search and made

several incriminating statements to police.  (D.I. 24 at 2)

## III. STANDARD OF REVIEW

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable searches
> and seizures, shall not be violated, and no Warrants shall
> issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be
> searched, and the persons or things to be seized.

U.S. Const. Amend. IV..  The threshold requirement for issuance of a warrant is

probable cause.  Illinois v. Gates, 462 U.S. 214, 236 (1983).  In reviewing a search

warrant application, a magistrate must consider whether, considering all of the

circumstances described in the affidavit, sufficient evidence has been presented that

demonstrates that there is a "fair probability" that evidence of a crime will be located

before validating a warrant.  Id. at 238.  Probable cause is a "fluid concept - turning on

---

[6]The search of Leroi Monae Barber Shop turned up no evidence of any drug
related crimes or transactions.  (D.I. 24 at 2)

[7]A 2001 blue Jeep Cherokee with Delaware registration PC 197381, a 1997 Ford
Tarus station wagon with Delaware registration PC 480919, and a 1995 blue Buick Park
Avenue with Delaware registration 119468. (D.I. 24, ex A)

6

the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232.

After a search warrant has been issued and is challenged on the basis of probable cause, the reviewing court must determine whether the judicial officer had a "substantial basis" for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). The decision of the issuing officer should be afforded great deference. United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002). The reviewing court should avoid "interpreting affidavits in a hyper-technical, rather than a common sense manner." Gates, 462 U.S. at 236 (quoting United States v. Ventresca 380 U.S. 102, 109 (1965)). In so doing, the court must confine itself to only the affidavit and cannot consider other portions of the record. Hodge, 246 F.3d at 305. When resolving questionable cases, the deference accorded warrants should prevail. United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). Moreover, direct evidence linking the place to be searched with a crime is not required for a warrant to issue. Id. at 1056. Rather, "probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspects's opportunity for concealment, and normal inferences about where a criminal might hide" the items sought. Id..

The good faith exception to the exclusionary rule "instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority' even though no probable cause to search exists." Zimmerman, 277 F.3d at 436 (quoting Hodge, 246 F.3d at 307). The Supreme Court's "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral

magistrate" compels the decision that such evidence should be admissible. Leon, 468

U.S. at 913. The Supreme Court has held that a "warrant issued by a magistrate

normally suffices to establish that a law enforcement officer has acted in good faith in

conducting the search." Id. at 922. The Third Circuit Court of Appeals has identified

four situations where an "officer's reliance on a warrant would not be reasonable and

would not trigger" the good faith exception:

1. Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;

2. Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3. Where the warrant was based on an affidavit so lacking in idicia of probable cause as to render official belief in its existence entirely unreasonable; or

4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Zimmerman, 277 F.3d at 436.

## IV. DISCUSSION

In the case at bar, defendant asserts that the warrant affidavit failed to establish

probable cause because it did not provide sufficient support for a nexus between the

residence at 3411 Franklin Place and defendant or his alleged drug transactions. In a

case where "a motion to suppress evidence obtained pursuant to a warrant does not

present a Fourth Amendment argument that should be decided in order to provide

instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing

court to turn immediately to a consideration of the officers' good faith." United States v.

Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307

F.3d 137, 145 (3d Cir. 2002) (citing Leon, 468 U.S. at 925). To determine if the good

faith exception should be applied, the court must ask "whether a reasonably well trained

8

officer would have known that the search was illegal despite the magistrate's authorization. United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). Defendant argues that "the good faith exception is inapplicable in the present case, because the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (D.I. 27 at 8) The Third Circuit has identified "very few situations" justifying the inapplicability of the good faith exception on this basis. "These include affidavits based on conclusory assertions, a single piece of outdated evidence, or an uncorroborated or unreliable anonymous tip." United States v. Sarraga-Solana, 263 Fed. Appx. 227, 231 (3d Cir. 2008) (citing United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005); Zimmerman, 277 F.3d at 437; United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993)).

In making his motion, defendant attempts to draw a parallel between the facts in this case and those in Zimmerman. Specifically, defendant argues that the affidavit for the warrant here is similar in that it "presented little, if any, evidence suggesting that Mr. Mitchell resided at 3411 Franklin Place." (D.I. 27 at 8) In Zimmerman, the warrant that police relied upon was based on one piece of evidence, which police knew to have been in the defendant's possession some six months prior to applying for the warrant. As a result, the Third Circuit found the evidence to be stale and the warrant not

9

supported by probable cause.[8] Zimmerman, 277 F.3d at 437.  This case, however, is distinguishable.

Here, the detectives did not submit a "bare-bone" affidavit based on conclusory opinions, stale information, and unsupported statements, but submitted an accurate, relevant, and detailed affidavit.  The detectives who submitted the affidavit observed defendant frequent the residence at 3411 Franklin Place on several occasions, twice immediately before or after the controlled purchases.  (D.I. 24 ex. A-1)  The surveillance conducted by police was extensive and extended over a three month period.  (Id.) During the fifth controlled purchase, which occurred within a few days of the search warrant being issued, police surveillance observed defendant entering 3411 Franklin Place, stay for a brief period of time, and drive directly to the predetermined location for the controlled purchase.  (Id. at ¶ 25)  Police also were able to establish a link between the listed owner of 3411 Franklin Place, Denise Smiley, and defendant.  (Id. at ¶ 21) The detectives' knowledge of drug traffickers,[9] and defendant's efforts to elude detection,[10] were also included in the affidavit.

_____

[8]The Third Circuit also found that the officer "crafted the affidavit to portray Zimmerman in the worst possible light," and that the affidavit was loaded with "lurid - and irrelevant - accusations."  Zimmerman, 277 F.3d at 437.  There was an additional issue that the piece of evidence cited in the warrant, adult pornography, did not support the issuance of a search warrant for child pornography.  Id.

[9] "[D]rug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies and even though these assets are in other persons' names, the drug trafficker[s] actually own and continue [to] use these assets and exercise dominion and control over them."  (D.I. 24, ex A at 5)

[10]Use of four different cars, none of which were registered to defendant or his listed address of 505 Shearman Street, during the five controlled purchases.  (D.I. 24, ex A-1)

10

Taking the entire affidavit into account, it was objectively reasonable for the detectives to rely on the Justice of the Peace Court's determination that probable cause existed when they searched 3411 Franklin Place.[11] As such, even assuming that a substantial basis for probable cause was lacking, the court finds that the good faith exception applies and, therefore, the evidence obtained pursuant to the warrant is admissible.[12]

## V. CONCLUSION

At Wilmington this  30th  day of July, 2008,

IT IS ORDERED that:

1. Defendant's motion to suppress evidence seized at 3411 Franklin Place on December 27, 2007, and statements made following his arrest is denied.  (D.I. 24)

2. A telephonic status conference is scheduled for **Tuesday, August 12, 2008** at **4:30 p.m.**, with the court initiating said call.

3. The time between this order and **August 12, 2008** shall be excluded under the Speedy Trial Act in the interest of justice.  18 U.S.C. § 3161(h)(8)(A)

United States District Judge

---

[11]Even if it could be shown that it was "entirely unreasonable" for the detectives to believe that they had established probable cause that defendant resided at 3411 Franklin Place, it was not at all unreasonable for them to believe that their affidavit established probable cause that evidence of defendant's drug transactions would be found at 3411 Franklin Place.

[12]As the search has been found valid, the "fruit of the poisonous tree doctrine" from Wong Sun does not apply to defendant's statements to police following his arrest, thus, rendering them admissible.

11